# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| BYRON BUSH, individually, and on behalf of all others similarly situated, | COLLECTIVE AND CLASS ACTION |
| Plaintiffs, | Case No. 8:25-cv-1375 (KKM) (TGW) |
| – against – | Hon. Kathryn Kimball Mizelle, U.S.D.J. |
| EZ ADVOCATES, LLC and RAHAMAN KARGAR, | Hon. Thomas G. Wilson, U.S.M.J. |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)

### INTRODUCTION

Plaintiff Byron Bush (hereinafter "Plaintiff" or "Bush"), individually and on behalf of all others similarly situated ("Plaintiffs"), are challenging Defendants EZ Advocates, LLC ("EZ Advocates") and Rahaman Kargar ("Kargar") (collectively, "Defendants") willful violations of the Fair Labor Standards Act ("FLSA"). More specifically, Plaintiffs allege that Defendants willfully violated the FLSA by knowingly suffering or permitting Plaintiffs to perform unpaid work and failing to pay these employees the federally mandated overtime compensation.

Bush respectfully submits that more employees would participate if they were made aware of the lawsuit.

Congress and the Supreme Court explicitly authorized employees to pursue FLSA claims on a collective basis through the opt-in procedure set forth in 29 U.S.C § 216(b). See Hoffman-La Roche v. Sperling, 493 U.S. 165, 170 (1989) ("A collective action allows [. . .] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity"). Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks conditional certification of his FLSA claim on behalf of the following employee collective:

> *All current and former employees who worked for Defendants at any time during the last three years* (the "FLSA Collective").

In accordance with these public policies, Plaintiffs hereby move for an Order:

(1) conditionally certifying the proposed FLSA Collective;

(2) requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates of employment, location(s) of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the Order;

(3) permitting Court-authorized notice of this action (*see* **Exs. A-B**, Proposed Notice and Consent Forms and Text Message Notice) to be sent via U.S. Mail, e-mail, and text message;

(4) appointing the undersigned as counsel for the FLSA Collective; and

(5) giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-approved Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

For the reasons set forth below, Plaintiffs respectfully submit that this Court should grant the motion.

## FACTS

### A. Parties and the Putative Collective

#### 1. Defendants

Defendant EZ Advocates is a business entity that assists individuals in getting out of their time share agreements, with locations in both Tampa, Florida and Portland, Maine. Defendant Kargar is a corporate officer who exercises sufficient control over EZ Advocates' business. To facilitate its business operations, EZ Advocates employs "sales employees," who are paid only a commission for sales made on a weekly basis, with no hourly compensation, despite the expectation that they abide by an official, hourly work schedule. Often times, if employees do not make any sales or enough sales, they frequently have workweeks in which they are paid nothing for their time.  This is a violation of the FLSA.

Upon information and belief, Defendants have employed approximately twenty (20) to thirty (30) other employees in this manner, within the past three years across the United States.

2.  **Named Plaintiff, Opt-in Plaintiffs, and the Putative FLSA Collective**

Named Plaintiff Bush worked for Defendants as a sales employee from on or about January 29, 2023 through July 8, 2024.

As a sales employees working for Defendants, Bush was expected to work a schedule of approximately forty-two (42) to forty-six (46) hours per week, specifically: (i) on Mondays through Thursdays, from about 11:00 AM to 8:00 PM; (ii) on Fridays, from about 11:00 AM to 5:00 PM; and (iii) occasionally on Saturdays, for approximately three to four (3-4) hours on average.

During Bush's entire tenure with Defendants, they only paid him fifteen percent (15%) commission for sales he made on a weekly basis. There were weeks in which Bush made no sales and received *zero* compensation for that week. There were also weeks in which, despite making a few sales, Bush still received less than the minimum wage, despite working in excess of forty (40) hours. At all times, Defendants failed to pay him the proper minimum wage and overtime compensation.

At any given time, there were about four to five (4-5) other sales employees like Bush working under the same common plan and policy of Defendants which violates the FLSA. With turnover from May 28, 2023 through the present, Bush has estimated that there are approximately twenty (20) to thirty (30) other employees who were similarly paid in accordance with Defendants' common plan and policy to violate the FLSA.

For example, Bush is aware that Chase Kirkland ("Kirkland"), who worked with Bush for Defendants in the same position and at the same time, was paid in the exact same violative manner.

**B. All of Defendants' Employees Were Subjected to Similar Unlawful Policies and Practices and Were Trained to Work Despite Unpaid <u>Wages and Overtime Compensation</u>**

Defendants maintained a uniform compensation policy and practice under which all sales employees were paid solely on a commission basis, regardless of the number of hours they worked or the fact that they were required to adhere to fixed hourly schedules. Under this policy, Defendants did not pay their sales employees any hourly wages—either for regular or overtime hours—in violation of the FLSA, 29 U.S.C. § 201 *et seq.*, such that Plaintiffs received no pay if they did not make sales despite working all week, or less pay than the minimum wage if they did not make enough in sales despite working all week. Thus, Defendants failed to pay Bush and other employees at least the minimum wage in violation of the FLSA.

Further, Defendants required all sales employees to report to work on a set schedule, maintain full-time hours, and remain logged in and available to perform sales duties throughout their assigned shifts. These schedules routinely required employees to work in excess of forty (40) hours per week, yet Defendants did not pay them overtime premiums or any guaranteed minimum wages for those hours. Thus, Defendants failed to pay Bush and others overtime in violation of the FLSA.

Instead, Defendants compensated employees only through commissions, regardless of whether those commissions met or exceeded the minimum wage or reflected payment for all hours worked, including overtime hours.

Defendants' compensation structure and scheduling requirements were standardized across all sales employees. Training, supervision, and scheduling practices were uniform throughout Defendants' operations, leaving no discretion for individual employees to determine their own hours or methods of pay. All sales employees were subject to the same policies governing attendance, productivity, and work hours, and all were required to comply with the same daily and weekly scheduling expectations. Consequently, the unlawful commission-only pay structure affected all sales employees in the same manner, depriving them of both regular and overtime compensation required by law.

Because Defendants' sales employees were subject to a common pay policy and similar working conditions, Plaintiffs and potential opt-in plaintiffs are "similarly situated" within the meaning of 29 U.S.C. § 216(b). The evidence shows a reasonable basis to conclude that Defendants' pay practices were uniform, unlawful, and applied collectively to all members of the proposed class.

Accordingly, Bush satisfies his low burden to establish that he is similarly situated to other employees of Defendants who were subject to the same common plan and policy which violates the FLSA.

## C. Defendants Maintained an Unlawful Policy and the Practice of Failing to Pay its Employees for Necessary Work

### 1. Unpaid Wages and Overtime Compensation

Defendants cannot rely on the FLSA's Section 7(i) exemption to avoid paying overtime. That exemption applies only if (1) the employee works for a retail or service establishment, (2) the employee's regular rate exceeds one and one-half times the minimum wage, and (3) more than half of the employee's earnings are from commissions. See 29 U.S.C. § 207(i); 29 C.F.R. § 779.412 *et seq.*

Here, Defendants paid Plaintiffs and all similarly situated sales employees solely on a commission basis while requiring them to maintain fixed hourly schedules and regularly work more than forty (40) hours per week. Because their regular rate of pay frequently fell below one and one-half times the minimum wage, Defendants cannot meet the requirements of Section 7(i), and their commission-only pay scheme violated the FLSA's overtime and minimum-wage mandates.

The FLSA and its regulations make clear that employees paid on a commission basis remain entitled to minimum and overtime pay unless the strict conditions of Section 7(i) are satisfied. See 29 C.F.R. §§ 778.117–.118, 779.412–.420.

By paying sales employees only commissions despite requiring full-time, hourly workweeks, Defendants maintained a uniform and unlawful pay policy that deprived all employees of wages owed under federal law.

### D. Defendants' FLSA Violations are Widespread and Affect All Employees

Plaintiffs and all employees worked for Defendants and were subject to the same unlawful pay practices outlined herein. Plaintiffs and employees did not receive compensation for the vast majority of their work duties, were not compensated for all hours worked, and where applicable, were denied overtime wages at the rate of time-and-a-half for time worked in excess of forty (40) hours per week. See Declaration of Byron Bush (hereinafter "Bush Decl.").

Defendants' work requirements and unpaid wages and overtime compensation deficiencies were common pay practices applicable to every employee, and Bush's sworn declaration provides *prima facie* evidence that Court-authorized notice is warranted. In light of the multitude of violations articulated above, and the detailed declaration submitted herewith, Plaintiffs easily satisfy the lenient burden applicable to pre-discovery certification motions in this Circuit.

## LEGAL STANDARD AND ARGUMENT

### A. The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees

The FLSA requires employers to pay employees overtime compensation at 1.5 times the regular rates at which they are employed for hours worked in excess of forty (40) hours in a week. See 29 U.S.C. § 207(a).

An employer who violates this requirement can be sued by the affected employees collectively. See 29 U.S.C. § 216(b).

In order to participate in such a collective action, each aggrieved employee must file a written consent. Id.

The FLSA is silent on whether or how other similarly situated persons should be notified of the pendency of a collective action so that they might "opt in." In Hoffmann-La Roche, Inc. v. Sperling, the Supreme Court held that courts have discretion to implement the collective action procedure by facilitating notice to potential class members.[1] See 493 U.S. 165, 173 (1989).  Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows […] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged […] activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

See Sperling, 493 U.S. at 170. Conversely, failure to provide prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. See Fisher v. Michigan Bell Telephone Co., 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009); see also Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

---

[1] Although Hoffman-LaRoche is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA incorporates the FLSA collective action provisions. See Mooney v. Aramco Servs. Co, 54 F.3d 1207, 1212 (5th Cir. 1995); Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n Hoffman-LaRoche, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases").

## B. The Eleventh Circuit Has Consistently Approved the Use of the "Fairly Lenient Standard" When Authorizing Notice to Employees

Federal courts, including those in the Eleventh Circuit, typically follow the "two-stage class certification" process set forth in Lusardi v. Xerox Copy, for determining whether all plaintiffs are similarly situated. See 118 F.R.D. 351 (D.N.J. 1987); see also Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008); Cameron-Grant v. Maxim Healthcare Servs. Inc., 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003) ("Since Hipp, the district courts in our circuit have utilized the two-tiered approach").

### 1. Stage One: Conditional Certification

The first stage, often called the "notice" stage, takes place before discovery and its purpose is to provide notice to potential plaintiffs and present them with the opportunity to opt into the pending case. See Ide v. Neighborhood Rest. Partners, LLC, Case No. 13-CIV.-509 (N.D. Ga.) (J. Cohen) (Dkt. 68, p. 10 n.4) ("conditional certification is generally determined early in the litigation process to allow parties knowledge of the full extent of relevant discovery …").

#### a. Plaintiffs Bear a Light Burden of Proof

Because the conditional certification decision is generally made prior to discovery, the plaintiff's evidentiary burden is "fairly lenient" and typically results in "'conditional certification' of a representative class." See Morgan, 551 F.3d at

1260-61 (quoting cases in which the notice-stage standard was described as "not particularly stringent," "fairly lenient," "not particularly heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)") (internal citations omitted); see also Diggs v. Ovation Credit Services, Inc., 2019 WL 4673813, at *4 (M.D. Fla. Sept. 25, 2019) (citing Hipp, 252 F.3d at 1218).

At this stage, this Court determines: whether (1) employees sought to be included in the putative class are similarly situated with respect to their job requirements and pay provisions; and (2) there are other employees who wish to opt-in to the action. See Dybach v.Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). The meaning of "similarly situated" is not defined in the FLSA, and the Eleventh Circuit has given courts only general guidance stating that the similarly situated requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." See Grayson v. Kmart Corp, 79 F.3d 1086, 1095 (11th Cir. 1996).

There are countless examples of district courts in this Circuit (including this Court) applying the "fairly lenient standard". See Chen v. Wow Rest. TH, LLC, 2023 WL 3976005, at *3 (M.D. Fla. June 13, 2023) (internal citations omitted); see also O'Day v. Inv. at Lake Diamond, LLC, No. 5:23-CV-59-GAP-PRL, 2023 WL 3456926, at *2 (M.D. Fla. Apr. 21, 2023), report and recommendation adopted, No. 5:23-CIV.-59-GAP-PRL, 2023 WL 3453549 (M.D. Fla. May 15, 2023);

Todd v. Daewon Am., Inc., No. 3:11CV1077-MHT, 2013 WL 557859, at *3 (M.D. Ala. Feb. 13, 2013), amended, No. 3:11CV1077-MHT, 2013 WL 1163431 (M.D. Ala. Mar. 20, 2013) ("Because discovery has not yet begun and the record is still undeveloped, the standard for finding similarity is 'fairly lenient'"); Troxel v. Gunite Pros, LLC, No. 21-0057-WS-N, 2022 WL 37525, at *2 (S.D. Ala. Jan. 4, 2022); McMurray v. Formel D, No. 2:19-CV-548-KOB, 2019 WL 8015556 (N.D. Ala. Oct. 10, 2019); Aiuto v. Publix Super Markets, Inc., No. 1:19-CV-04803-LMM, 2020 WL 2039946 (N.D. Ga. Apr. 9, 2020); Izquidero v. Solar Bear Services, Inc., 2017 WL 606347 (S.D. Fla. Feb. 15, 2017); Caamano v. 7 Call Center Inc., 2016 WL 4704934 (S.D. Fla. Sept. 8, 2016); Collado v. J. & G. Transp., Inc., 2014 WL 5390569 (S.D. Fla. Oct. 23, 2014); Pares v. Kendall Lakes Auto., LLC, 2013 WL 3279803 at *4 (S.D. Fla. June 27, 2013) (declining to resolve factual issues or rule on the merits in finding that plaintiffs were similarly situated); Montes de Oca v. Gus Machado Ford of Kendall, LLC., 2011 WL 13223702, at *3 (S.D. Fla. Apr. 18, 2011) ("At the second stage, the court will have much more information on which to base a determination of whether a claimant is similarly situated […]"); Henderson v. Holiday CVS, LLC, 2010 WL 1854111, at *3 (S.D. Fla. May 11, 2010) (noting that a "fact finding determination on the merits" is inappropriate at this stage).

A lower evidentiary burden at this stage serves the FLSA's remedial purpose and court holdings that the § 216(b) "similarly situated" requirement must be

interpreted generously to permit workers to collectively pursue their FLSA claims. See, e.g., Hipp, 252 F.3d at 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); Jackson, 163 F.R.D. at 431 (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); Garner v. G.D. Searle Pharm. & Co., 802 F. Supp. 418, 422 (M.D. Ala. 1991) (rigorous inquiry into § 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the antidiscrimination provisions of the FLSA.") (quoting Hoffman-LaRoche, 493 U.S. at 173).

The focus of the Court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated. See Kreher v. City of Atlanta, Ga., 2006 WL 739572, at *4 (N.D. Ga., Mar. 20, 2006) (stating that plaintiffs are not required to submit evidence of a highly particularized nature and finding that "[a]lthough lacking some detail, Plaintiffs' declarations establish the existence of other employees employed in similar positions and subjected to similar policies"). The Court generally makes its decision based on the pleadings and any submitted affidavits. See Lara v. G & E Fla. Contractors, LLC, 2015 WL 4760678, at *2 (S.D. Fla. July 21, 2015) (citing Grayson, 79 F.3d at 1097).

This motion has been filed pre-discovery. Accordingly, this matter is currently at the "notice stage" and the lenient burden of proof applies.

### b. Evidence Typically Accepted to Meet the "Similarly Situated" <u>Standard</u>

At the "notice" stage, plaintiffs may show *either* (1) that their job positions and duties are similar to those positions held by the putative class members, <u>see</u> <u>Hipp</u>, 252 F.3d at 1217; <u>see also</u> <u>Grayson</u>, 79 F.3d at 1096, *or* (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation, <u>see</u>, <u>e.g.</u>, <u>Morgan</u>, 551 F.3d at 1262-63 (upholding district court's denial of employer's motion to decertify and finding that "there is nothing unfair about litigating a single corporate decision in a single collective action"); <u>see</u> <u>also</u> <u>Lindberg v.UHS of Lakeside, LLC</u>, 761 F. Supp. 2d 752, 758 (W.D. Tenn. 2011) ("It is clear that plaintiffs are similarly situated when they suffer from a single, FLSA violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs […] Plaintiffs may also meet the similarly situated requirement if they demonstrate, at a minimum, that 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct") (internal citations omitted); <u>Scott v. Heartland Home Finance, Inc.</u>, 2006 WL 1209813, *2 (N.D. Ga.) (holding the notice stage requires only "substantial allegations that the putative class members were together the victims of a single

decision, policy, or plan") (internal citations omitted); <u>Hill v. Muscogee County Sch.</u> <u>Dist.</u>, 2005 WL 3526669, *2 (M.D. Ga.) ("to show that they are similarly situated, plaintiffs may present allegations and evidence to show that defendant engaged in a unified policy, plan, or scheme of FLSA violations").[2]  Plaintiffs are not required to show that they hold identical positions. See <u>Hipp</u>, 252 F.3d at 1217; <u>see</u> <u>also</u> <u>Grayson</u>, 79 F.3d at 1096.

In the Eleventh Circuit, a plaintiff must also demonstrate that there is a "reasonable basis" to believe that there are other employees who desire to opt-in. See <u>Reyes v. AT&T Corp.</u>, 801 F. Supp. 2d 1350, 1356 (S.D. Fla. 2011). In making this showing, a plaintiff "may present evidence of other employees who desire to opt-in via affidavits, consents to join the lawsuit, or expert evidence of the existence of similarly-situated employees." See <u>Palacios v. Boehringer Ingelheim Pharm.</u>, 2011 WL 6794438, at *4 (S.D. Fla. April 19, 2011). Critically, Plaintiff's burden to show that there are other "potential opt-ins is not onerous." See <u>Rojas v. Garda CL</u> <u>Se., Inc.</u>, 297 F.R.D. 669, 676 (S.D. Fla. 2013), <u>order vacated in part on</u> <u>reconsideration,</u> No. 13-23173-CIV, 2014 WL 11906592 (S.D. Fla. Apr. 11, 2014).

---

[2] <u>See</u>, <u>e.g.</u>, <u>Bell v. Mynt Entertainment, LLC</u>, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (plaintiffs meet their burden by making substantial allegations supported by affidavits which successfully engage defendant's affidavits to the contrary, and demonstrate the existence of similarly situated employees who may desire to opt in to the action); <u>see also</u> <u>Carmody v. Fla. Ctr. for Recovery,</u> <u>Inc.</u>, 2006 WL 3666964, at *3 (S.D. Fla. Nov. 8, 2006) ("Hence, the Court will look to the filings, declarations, and affidavits on record to determine whether there are substantial allegations showing that the named Plaintiffs are similarly situated to the putative class members").

Here, Plaintiffs meet their burden of proof under the lenient conditional certification standard. As explained herein, Plaintiffs' Complaint and the declaration submitted with this Memorandum, coupled with Defendants' uniform pay policies, satisfy the requisite burden of proof to certify a collective action and authorize notice. The declaration, more specifically, establishes that Defendants employed uniform and company-wide pay practices for their sales employees and illustrate that Defendants ignored the law by refusing to pay its employees for all hours worked, in accordance with the minimum wage and any applicable overtime compensation. See, generally, Bush Decl. Likewise, the Declaration illustrates that the employees' time worked in excess of the amounts paid as compensation, and in excess of forty (40) hours per week, is significant, was required to perform Plaintiffs' job, and is not *de minimis*.[3]

Additionally, there is a "reasonable basis" to believe that there are other employees who desire to opt-in.

---

[3] This is to the extent that the *de minimis* doctrine remains a valid legal defense after the Supreme Court's decision in Sandifer v. U.S. Steel Corp., 571 U.S. 220 (2014). Further, in Peterson v. Nelnet Diversified Sols., LLC, a 2021 call center matter with facts concerning off-the-clock work, the Tenth Circuit granted partial summary judgment in favor of the plaintiffs on the issues of compensability and the inapplicability of the *de minimis* doctrine. See 15 F.4th at 1049, 1036 (inapplicable where "activities are integral and indispensable to the [employer's] principal activities"). The Court in Peterson held that the amount of time devoted to booting up and logging on to their work computers – 2.27 minutes in that case – "is not so miniscule that it would be difficult to measure." Id. at 1043-1044.

Without notice, and in addition to the named Plaintiff Bush, see Bush's Declaration, which sufficiently establishes that each of the putative opt-in plaintiffs are "similarly situated" to the named Plaintiffs, that they all have similar (if not identical) job duties and pay, and that they believe other employees would join the case should they be made aware of it. Courts regularly find this to be a sufficient showing of interest. See Pares v. Kendall Lakes Automotive, LLC, 2013 WL 3279803, at *5 (S.D. Fla. June 27, 2013) ("the affidavits from the two other employees shows that at least two other co-workers desire to join the suit, thereby raising [Plaintiffs'] contention beyond one of pure speculation."); see also Billingsley v. Citi Trends, Inc., 2013 WL 246115, at *2 (N.D. Ala. Jan. 23, 2013) ("Where consents to [participate in the] suit have already been filed district courts in the Eleventh Circuit have found that, for purposes of deciding a motion for conditional collective action certification, the already-filed consents to opt-in established that there were persons ... who would join in [the] suit if they had notice of the suit).

Accordingly, Plaintiffs have met their lenient burden of proof and this Court should immediately authorize issuance of the accompanying proposed form of Notice to all employees who worked for Defendants at any time during the past three years.

### c.  At the Notice Stage, Courts Do Not Evaluate the Merits, Make Credibility Determinations, or Consider Individual Defenses

In making the determination of whether a group of similarly situated individuals exists, the Court does not evaluate the merits of the case or "make determinations regarding the credibility of particular affiants." See Aiuto, 2020 WL 2039946, at *5 (citing Kreher v. City of Atlanta, No. 1:04-CV-2651-WSD, 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006)). To do so at this juncture would place too high of a burden on the Plaintiffs at the preliminary stage in the litigation because it would require them to "submit evidence of a highly particularized nature." See Kreher, 2006 WL 739572, at *4.

Similarly, allegations that the parties' claims or defenses are too individualized do not preclude conditional certification. See Riddle v. Suntrust Bank, No. 1:08-cv-1411-RWS, 2009 WL 3148768, at *2–3 (N.D. Ga. 2009) (finding that "variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage" and "[t]he appropriate time to address issues of individual differences between putative class members and whether any particular individual is exempt is after the completion of discovery and during the second stage of the certification determination."); See Kreher, 2006 WL 739572, at *4 n. 8 & 9 (N.D. Ga. Mar.20, 2006) (issues of individualized nature of employees' claims, although potentially meritorious, should be considered during second stage of analysis); see also Clarke v. Convergys

Customer Mgmt. Group, Inc._, 370 F. Supp. 2d 601, 607 (S.D. Tex. 2005) (individualized factual issues should be considered during second-stage analysis, not initial "notice" stage); Reab v. Electronic Arts, Inc._, 214 F.R.D. 623, 627 (D.Colo.2002) (factors such as "disparate factual and employment settings of the individual plaintiffs" and "various defenses available to defendant which appear to be individual to each plaintiff" are considered during the second, and stricter, stage of the similarly-situated analysis).

## 2. Early Notice Protects Employees' Statutes of Limitations

The statute of limitations for FLSA violations is two (2) years, extended to three (3) years for willful violations (which is pled in this case). See 29 U.S.C. § 255(a). Accordingly, if notice is delayed, a great number of employees will lose their claims due to nothing more than the passage of time.

District courts recognize the great prejudice that befalls employees when notice of a collective action is not issued in a timely fashion. See Reed v. Starbucks Coffee Company, 2009 WL 10668193, at *1 (S.D. Fla. Apr. 24, 2009) ("[i]n a collective action, the individual opt-in plaintiff's claim is considered to have commenced at the time of filing the notice of consent […] The Eleventh Circuit instructs that the deadlines demonstrate Congress' 'concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint.'") (internal

citations omitted); see also Mills v. OK Sun Adams, 2014 WL 1340758, at *1 (M.D. Ga. Apr. 3, 2014) ("[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action […] Therefore, an opt-in plaintiff 'must file his written consent to opt into the class action prior to the expiration of the statute of limitations on his [FLSA] claim'') (citing Grayson, 79 F.3d at 1106-07). See also LaFleur v. Dollar Tree Stores, Inc., 2012 WL 4739534, at *3 (E.D. Va. Oct. 2, 2012) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action . . . courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding" (internal citation omitted).

These decisions recognize that because most employees will not know about a collective action before receiving court-authorized notice, those employees cannot join the case until after that notice is sent and will have lost a large portion of their claim(s) by the time they do join. In Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 406 (D.N.J. 1988), the court there held:

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim […] to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

When courts delay in making a conditional certification determination, numerous FLSA violations may persist without redress due to nothing more than the running statute of limitations. Indeed, defendant employers could easily eliminate all FLSA exposure by simply running out the clock. Conversely, employees who lack meritorious claims or who are not ultimately found to be "similarly situated" to the named plaintiffs in a given case receive no structural advantage from early court facilitated notice. These employees still must prove their case on the merits, and they still must withstand a stage-two decertification analysis in order to proceed in the collective action. In sum, the only plausible purpose for delaying early notice is to foreclose the vindication of valid claims under the FLSA.

### 3. <u>Stage Two: The Certification/Decertification Stage</u>

The second stage of certification process is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery" and the matter is ready for trial. <u>See</u> <u>Hipp</u>, 252 F.3d at 1218; <u>see also</u> <u>Morgan</u>, 551 F.3d at 1260.

Based on a fully-developed record, the court makes an informed factual determination of whether the named plaintiffs and the opt-ins are similarly situated. <u>See</u> <u>Hipp</u>, 252 F.3d at 1218; <u>see also</u> <u>Morgan</u>, 551 F.3d at 1261.

The plaintiff has a heavier burden to show similarity at the second stage than at the first. <u>See</u> <u>Morgan</u>, 551 F.3d at 1261.

## C. Courts in the Eleventh Circuit Have Previously Granted Conditional Certification in Commissions Cases Based on Similar Facts

As evidenced by the United States Department of Labor's ("USDOL") issuance of specific guidance addressing the payment of commissions under the FLSA, such violations are a recurring problem in the retail and service industries. See U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #20: *Employees Paid Commissions by Retail Establishments* (rev. July 2008).[4] The USDOL has emphasized that non-exempt employees paid on a commission basis remain entitled to both minimum wage and overtime compensation unless all conditions of the Section 7(i) exemption are satisfied.   Moreover, the Eleventh Circuit has granted conditional certification based on facts similar to those offered here. See Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330 (M.D. Fla. 2007) (granting Conditional Class Certification where employees were paid a commission and regularly worked uncompensated overtime).   Further, at this stage, it is not necessary to discern between sales employees and other employees working for Defendants. See de la Fuente v. Columbia Recycling Corp., 704 F. Supp. 3d 1351, 1357 (N.D. Ga. 2023) ("'At the notice stage, 'variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered'" (internal citations omitted)).

---

[4]  See  https://www.dol.gov/agencies/whd/fact-sheets/20-flsa-commissions-retail  (last accessed October 17, 2025).

### D. <u>Plaintiffs' Proposed Notice Should Be Approved</u>

Plaintiffs' proposed long-form Notice is attached as **Exhibit A**. Notice is an FLSA plaintiff's communication with his co-workers, and, thus, "[a]bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." See <u>Frykenberg v. Captain George's of South Carolina, LP</u>, 2020 WL 5757678, at *4 (D.S.C. Sept. 28, 2020) (<u>quoting</u> <u>Hose v. Henry Indus., Inc.</u>, 49 F. Supp. 906, 919 (D. Kan 2014), *order clarified by* 2014 WL 5510927 (D. Kan. Oct. 31, 2014)); <u>see</u> <u>also</u> <u>Ivery v. RMH Fran. Corp.</u>, 280 F. Supp. 3d 1121, 1140 (N.D. Ill. 2017) (Although "[t]he Court has both the power and the duty to ensure that the notice is fair and accurate, that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary" (internal citations omitted)).

That being said, Plaintiffs' proposed Notice was fashioned after notices that were approved in other FLSA collective actions.[5]

Hence, this Court should approve Plaintiffs' proposed Notice and permit Plaintiffs' counsel to circulate the Notice by U.S. Mail, email, and text message.

---

[5] <u>See, e.g.</u>, <u>Beattie</u>, 2019 WL 2866559, at *2; <u>Gaffers v. Kelly Servs.</u>, No. 16-cv-10128 (E.D. Mich. 2016); <u>Williams v. Sykes, et al.</u>, No. 13-cv-946 (D. Minn. 2013); <u>Stelmachers v. Maxim Healthcare Services, Inc.</u>, No. 13-cv-01062 (N.D. Ga. 2013); <u>Lawrence v. Maxim Healthcare Services, Inc.</u>, No. 12-cv-2600 (N.D. Ohio 2012).

### E. **Notice Should Be Sent by Mail, Email, and Text**

Recognizing the reality of modern communication and its potential to advance the remedial goals of the FLSA, numerous courts, including those in this Circuit, have found it appropriate to distribute notice by way of e-mail in addition to mail. See, e.g., Cooper v. E. Coast Assemblers, Inc., No. 12–80995–CIV, 2013 WL 308880, at *4 (S.D. Fla. Jan. 25, 2013) ("Plaintiff's counsel may email the Notice in addition to its mailing"); see also Palma v. Metropcs Wireless, Inc., No. 8:13–cv–698–T–33MAP, 2014 WL 235478 at *2 (M.D. Fla. Jan. 22, 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class") (citing Stuven v. Texas De Brazil (Tampa) Corp., No. 8:12–CV–1283–T–24TGW, 2013 WL 610651 (M.D. Fla. Feb. 19, 2013); Pogue v. Chisholm Energy Operating, LLC, 2021 WL 5861184, at *9 (D.N.M. Dec. 10, 2021) (finding mail, email, and text message as appropriate methods for notice distribution); Rapp v. HV Occupational Health Advisors of Am., LLC, No. 20-cv-02043-PAB-KMT, 2021 WL 4426956, at *6 (D. Colo. Sept. 27, 2021) (permitting plaintiff to "send the Notice by First Class U.S. Mail and email to the last known address of each" putative class member); German v. Holtzman Enter., Inc., No. 19-cv-03540-PAB-STV, 2021 WL 1087718, at *5 (D. Colo. Mar. 22, 2021) (ordering production of name, address, email address, and telephone number of putative collective members to ensure proper notice is given); Phelps v. MC Commc'ns, Inc.,

2:11– CV–00423–PMP–LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have e-mail addresses, as well as send it by first class mail. E-mail is an efficient, reasonable, and low cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees"); Varghese v. JP Morgan Chase & Co., Nos. 14 Civ. 1718 (PGG) & 15 Civ. 3023 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) ("given the reality of communications today … email notice in addition to notice by first class mail is entirely appropriate"); Atkinson v. TeleTech Holdings, Inc., No. 3:14–cv– 253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (approving e-mail notice to employees, noting it "appears to be in line with the current nationwide trend," and that "it advances the remedial purpose of the FLSA").

In addition, given the importance and urgency of providing notice to class members of a pending FLSA case, the Court should permit distribution of notice via text message, as courts around the nation, including this Court, are becoming more inclined to do. See Pogue, 2021 WL 5861184, at *9 (finding "mail, email, and text message" as "appropriate methods" for notice distribution); see also Beattie v. TTEC Healthcare Solutions, Inc., 2019 WL 2866559, at *2 (D. Colo. July 3, 2019) (permitting notice distribution via e-mail, text message and regular mail); Calvillo v. Bull Rogers, Inc., 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (noting the law

regarding notice by email and text is on plaintiff's side, that courts have approved such methods in today's mobile society, and "that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."); Irvine v. Destination Wild Dunes Mgmt., 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (Noting "[t]he request that notice be distributed via direct mail, email and text messaging" "eminently reasonable" and that "one's email address and cell phone number serv[e] as the most consistent and reliable method of communication" due to a much more mobile society).

Accordingly, notice should be sent via first class mail, e-mail, and text message.

### F. This Court Should Grant a Sixty (60) Day Opt-in Period for Additional Plaintiffs to Join this Litigation And for Reminder Notice to Be Issued to Those Who Have Not Yet Responded

Plaintiffs respectfully request that the Court approve a sixty (60) day opt-in period and allow Plaintiffs to issue one reminder email thirty (30) days into the notice period to those who have not yet responded to the initial opt-in notice.

Courts have commonly and routinely approved reminders, especially post-pandemic.[6]

---

[6] See Troxel v. Gunite Pros, LLC, No. 21-0057-WS-N, 2022 WL 37525, at *6 (S.D. Ala. Jan. 4, 2022); see also Benjamin v. Right Path Behavioral Health Servs., LLC, No. 3:17-CV-457-J-39MCR, 2018 WL 922350, at *3 (M.D. Fla. Feb. 7, 2018) (Davis, J.); Robertson v. REP Processing, LLC, 2021 WL 4255027, at *4 (D. Colo. Sept. 16, 2021) (finding a reminder warranted because plaintiff argued that the pandemic has created barriers to communication with collective members); Pogue, 2021 WL 5861184, at *9; German, 2021 WL 1087718, at *4; Ortez v. United Parcel Serv., Inc., 2018 WL 4328170, at *3 (D. Colo. Sept. 11, 2018); Deatrick v. Securitas Sec. Servs. USA, Inc., No. 13–cv–05016–JST, 2014 WL 5358723 (N.D. Cal. Oct. 20, 2014).

## <u>CONCLUSION</u>

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), enter an Order:

(1) Conditionally certifying the proposed FLSA Collective;

(2) requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;

(3) Authorizing Plaintiffs' proposed form of notice (**Exhibits A** & **B**) and implementing a procedure whereby the notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, email, and text message) to:

> *All current and former employees who worked for Defendants at any time during the last three years* (the "FLSA Collective").

(4) Appointing the undersigned counsel as counsel for the FLSA Collective; and

(5) Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-approved Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

Dated:      Jamaica, New York
            October 17, 2025          Respectfully submitted,

**CONSUMER ATTORNEYS PLLC**

*/s/ David Pinkhasov, Esq.*
David Pinkhasov, FL # 1040933
6829 Main Street
Flushing, NY 11367-1305
(718) 701-4605 (office)
(718) 715-1750 (facsimile)
dpinkhasov@consumerattorneys.com

**CONSUMER ATTORNEYS PLLC**

*/s/Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
68-29 Main Street
Flushing, NY 11367-1305
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Plaintiffs,*
*Byron Bush, the FLSA Collective, and*
*the Putative Class*

## **CERTIFICATE OF SERVICE**

I certify that on October 17, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.