# EXHIBIT "B"

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (the "***Agreement***"), dated March 29, 2022, is made by and between PINE TREE CONSULTANTS, LLC, a Maine limited liability company, with its principal office at 449 Forest Avenue, Suite 204 Portland, Maine 04101, and its related affiliate EASYADVOCATES, LLC, a Wyoming limited liability company (collectively the "***Company***"), and Chase Kirkland (the "***Employee***"). Certain capitalized terms used in this Employment Agreement are defined in Section 16 below

### R E C I T A L S

A.      Company, its affiliates and their respective subsidiaries, successors and assigns own and operate a business of negotiating the termination of timeshare contracts and for its clients (the "***Business***") and have accumulated valuable and confidential information including trade secrets and know-how relating to industry knowledge, marketing plans, sources of supply, business strategies and other business records pertaining to the Business.

B.      Company wishes to employ Employee as a Sales Representative reporting to Tyler Patterson, Sales Manager of the Company, with the duties and principal responsibilities as set forth on Exhibit A attached hereto, at the Company's Tampa, Florida location (the "***Position***") and with such other duties and responsibilities as Company may assign to Employee from time to time; and Employee wishes to accept such employment subject to the terms and conditions of this Agreement.

C.      The agreement by Employee to contemporaneously enter into a certain Non-Competition Agreement of even date is a condition precedent to the employment of Employee by the Company in the Position; Employee hereby acknowledges the restrictive covenants set forth in said Non-competition Agreement and acknowledges that Employee's execution of the Non-competition Agreement is an express condition of Employee's employment; and that said covenants are given as material consideration for such employment and the other benefits conferred upon Employee by this Agreement.

D.      As used herein, the term "Company" shall refer to Company and, where applicable, to any member of the Company for which Employee may from time to time be performing services under this Agreement.

NOW, THEREFORE, in consideration of the foregoing, the employment provided hereunder, and other valuable consideration, receipt of which is hereby acknowledged,  the parties hereto, intending to be legally bound hereby, agree as follows:

### Article 1
### Employment

1.1 EMPLOYMENT AND REPORTING. Company agrees to employ Employee,  and Employee accepts employment in the Position, reporting to the Manager of the Company and/or any individual the Manager may from time-to-time designate, all upon the terms

and conditions hereinafter set forth.

**Article 2**
**Duties and Policies**

2.1    DUTIES. The Employee agrees to devote his/her full time and best efforts to Employee's employment duties in the Position or such other or different positions or duties to which Employee may be assigned during the Term (as hereinafter defined).

2.2    POLICIES. Employee agrees to abide by the policies, rules, regulations or usages applicable to other employees with comparable positions within the Company, from time to time and provided to Employee in writing (collectively, the "***Policies***").

2.3    COMPANY LOCATIONS. Employee shall be primarily assigned to the Company's Tampa, Florida location, but Employee must be reasonably available for occasional travel, meetings and temporary functions at other Company and other locations and offices, as may be required to fulfill the duties and responsibilities of the Position.

**Article 3**
**Term**

3.1 TERM. Subject to Employee's fulfillment of his responsibilities and duties in the Position, the term of Employee's employment under this Agreement (the "Initial Term" and, collectively with any Renewal Term, the "Term") shall be One (1) year, beginning on March 29, 2022 (the "Commencement Date"), unless terminated earlier as hereinafter provided. Upon the expiration of the Initial Term, this Agreement may be renewed for additional one-year periods (each such period being a "Renewal Term") upon the mutual written agreement of the Employee and the Company.

**Article 4**
**Compensation**

4.1 SALARY. For all services to be rendered by Employee in any capacity hereunder, the Company shall pay Employee an annual salary of seventeen thousand six hundred and eighty dollars ($17,680.00), less withholding and other taxes required by law (the "***Salary***"), payable in equal weekly installments of three hundred and forty dollars ($340.00), PLUS COMMISSIONS. Employee shall be eligible to receive increases in Employee's Salary pursuant to periodic salary reviews consistent with Company's corporate policies, it being understood such increases are not guaranteed, but are subject to Employee's job performance and the determination by the Company, in its sole discretion, to award salary increases to Employee.

**Article 5**
**Fringe Benefits**

- 2 -

5.1    INITIAL FRINGE BENEFITS. During the term of this Agreement, Employee shall be entitled to participate in such fringe benefits as, from time to time, may be applicable to the Company's similarly situated employees, subject to the terms and conditions of such fringe benefit plans. The Employee's "***Initial Fringe Benefits***" include those listed on <u>Exhibit B</u> attached hereto and incorporated herein by reference. The Initial Fringe Benefits may be phased out and terminated and the Company may substitute for the Initial Fringe Benefits such different and/or additional fringe benefits as the Company from time to time, after the date hereof, makes available for the Company's similarly situated employees.

5.2    ELIMINATION OR MODIFICATION. Fringe benefits as used in this Section do not include cash compensation or other compensation, or the additional benefits conferred under Section 5.3 below. The Company reserves the right to modify, eliminate or change fringe benefits in its discretion.

## Article 6
## Termination

6.1    TERMINATION BECAUSE OF DEATH OR TOTAL DISABILITY. Employee's employment will terminate automatically upon the date of Employee's Death or Total Disability. For the purposes of this Agreement, "Total Disability" means the inability of Employee, due to a physical or mental impairment, to perform the essential functions of Employee's position, with or without reasonable accommodation, for a period of ninety (90) days. Whether Employee is disabled will be determined by the Company based on evidence provided by one or more physicians selected by the Company. Any question as to the existence of the Employee's Disability as to which the Employee and the Company cannot agree shall be determined in writing by a qualified independent physician mutually acceptable to the Employee and the Company. If the Employee and the Company cannot agree as to a qualified independent physician, each shall appoint such a physician and those two physicians shall select a third who shall make such determination in writing. The determination of Disability made in writing to the Company and the Employee shall be final and conclusive for all purposes of this Agreement.

6.2    TERMINATION BY THE COMPANY WITHOUT CAUSE. The Company may terminate Employee's employment without cause by giving Employee seven (7) days' prior written notice.

6.3    TERMINATION BY THE COMPANY FOR CAUSE. The Company may terminate this Agreement and Employee's employment hereunder immediately upon written notice for Cause. For the purposes of this Agreement, "***Cause***" shall mean:

      (a)    embezzlement or other theft of Company property;

(b)     material and persistent neglect of or failure to carry out Employee's employment duties and responsibilities in the Position;

(c)     a material breach of Employee's covenants and agreements contained herein, or of the covenants and agreement contained in the Non-Competition Agreement by Employee while employed by the Company;

(d)     failure to comply with Company Policies;

(e)     drug, alcohol or other substance abuse;

(f)     sexual harassment of the Company's employees or customers, or battery or other criminally actionable offense by Employee, whether perpetrated against Company employees or customers or others; or

(g)     Employee's conviction of any felony while employed by the Company.

The foregoing shall constitute and be in all respects grounds for termination for Cause by the Company.

6.4     RESIGNATION. Employee may resign from employment at any time for any reason by giving seven (7) days' written notice to Company of such intention. In such event, Company may, in its discretion, permit Employee to work through the notice period or accept the Employee's immediate resignation.

6.5     PAYMENTS UPON TERMINATION. Upon any termination of the Agreement pursuant to this Article 6, Employee (or Employee's estate and/or beneficiaries, as the case may be) shall be entitled to receive (i) unpaid Salary through the effective date of termination, which shall be paid on the next regular payroll date following the effective date of termination, and (ii) such employee benefits, if any, as to which Employee may be eligible under Company's employee benefit plans as of the effective date of termination; provided that in no event shall Employee be eligible for any severance payments, termination payments, or further payment of Salary after the effective date of termination. Notwithstanding any other provision contained herein, all payments made in connection with Employee's Total Disability shall be provided in a manner which is consistent with federal and state law.

**Article 7**
**Non-Disclosure; Non-Competition;**

7.1     NON-DISCLOSURE OF CONFIDENTIAL INFORMATION. Employee acknowledges that during Employee's employment, Employee will become fully familiar with all aspects of Company's Business, and will obtain access to confidential and proprietary information relating to such businesses. Employee understands, agrees and covenants that such information is valuable and Employee has no property interest in it. Therefore,

- 4 -

Employee covenants and agrees that during Employee's employment with Company and thereafter, Employee will not use, disclose, communicate or divulge such information to any person not employed by Company, or use such information except as may be necessary to perform Employee's duties as an Employee under this Agreement. Employee's obligations in this Section shall survive the expiration of the Term of this Agreement and/or termination of Employee's employment under this Agreement for any reason whatsoever.

7.2    RESTRICTION ON COMPETITION. Employee agrees that, during the Non-competition Period and within the Geographic Market Area, Employee shall not:

     a)    compete, either directly or indirectly, alone or with others, as stockholders, employees, consultants, advisors or otherwise, with the Business of the Company; or

     b)    become an officer, director, shareholder, owner, co-owner, partner, employee, consultant, advisor or manager of, for or to, or acquire or hold (of record, beneficially or otherwise) any direct or indirect interest in, any Person that competes with the Business of the Company.

7.3    NONSOLICITATION.  During the Non-competition Period, Employee will not directly or indirectly, take any action to (i) recruit, solicit, entice, or induce any employee, Restricted Customer, supplier or consultant of the Company to terminate such employee's employment or terminate or curtail such supplier's, Restricted Customer's, or consultant's business relationship with the Company or, (ii) interfere with or disrupt such supplier's, Restricted Customer's or consultant's relationship with the Company, or (iii) except with the prior written consent of the Company, hire or employ any person who was or is an officer, director or employee of either Company.

7.4    SPECIFIC PERFORMANCE; TOLLING. Employee agrees that, in the event of any breach or threatened breach by Employee of any covenant or obligation contained in this Article 7, the Company shall be entitled (in addition to any other remedy that may be available to it, including monetary damages) to seek (a) a decree or order of specific performance to enforce the observance and performance of such covenant or obligation and (b) an injunction restraining such breach or threatened breach. Employee further acknowledges and agrees that the Non-competition Period shall be tolled (and automatically extended accordingly) for all periods during which Employee is in breach of any covenant or obligation contained in this Article 7.

## Article 8
## Return of Property

8.1 RETURN OF PROPERTY. Upon termination of this Agreement for any reason, Employee agrees to immediately return all Company property, whether confidential or not, without keeping copies or excerpts thereof, including, but not limited to, computers, printers, customer lists, samples, product information, financial information, price lists, marketing materials, keys, credit cards, automobiles, technical data, research, blueprints, trade secrets information, and all confidential or proprietary information. Employee's

obligations in this Section shall survive the expiration of the Term and/or termination of Employee's employment under this Agreement for any reason whatsoever.

**Article 9**
**Non-Disparagement**

9.1     NON-DISPARAGEMENT. Employee agrees and covenants that Employee will not at any time make, publish or communicate to any person or entity or in any public forum any false, derogatory, defamatory or disparaging remarks, comments or statements concerning the Company or its respective businesses, or any of their employees, officers or members.

**Article 10**
**Loyalty**

10.1 LOYALTY. Employee shall devote Employee's full time and best efforts to the performance of Employee's employment under this Agreement. During the Term, Employee shall not at any time or place whatsoever, either directly or indirectly, engage in any other professional or active business to any extent whatsoever, except on or pursuant to the terms of this Agreement, or with the prior written consent of Company. Employee agrees that he will not, while this Agreement is in effect, do any unlawful acts or engage in any unlawful habits or usages which injure, directly or indirectly, Company and its business.

**Article 11**
**Miscellaneous**

11.1 GOVERNING LAW, JURISDICTION AND VENUE. This Agreement shall be governed by and construed in accordance with the laws of the State of Maine without giving effect to its conflicts of laws rules. The parties agree that the exclusive jurisdiction and venue for any action arising out of or related in any way to the interpretation or enforcement of any provision of this Agreement shall be in the state or federal courts having jurisdiction over Cumberland County, Maine, subject to ordinary rights of appeal, with any order or judgment enforceable in any court of competent jurisdiction.

11.2 HEADINGS. The descriptive headings of sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meanings or construction of any of the provisions hereof.

11.3 SEVERABILITY AND VIOLATION OF LAWS. If any provision of this Agreement shall be held invalid or unenforceable according to law, such provision shall be modified to the extent necessary to bring it within the legal requirements. Any such invalidity or unenforceability shall not affect the remaining provisions of this Agreement, and such remaining provisions shall continue in full force and effect.

11.4    NOTICES. Any notice or other communication required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given (i) upon hand delivery, or (ii) on the third day following delivery to the U.S. Postal Service as certified or registered mail, return receipt requested and postage prepaid, (iii) on the first day following delivery to a nationally recognized United States overnight courier services for next business day delivery with fee prepaid, or (iv) when telecopied or sent by e-mail transmission if an additional notice is also given under (i), (ii) or (iii) above within three (3) days thereafter. Any such notice or communication shall be directed to a party at its address set forth below or at such other address as may be designated by a party in a notice given to all other parties hereto in accordance with the provisions of this Section.

<u>FOR THE COMPANY</u>:

Pine tree Consultants, LLC
Easy Advocates, LLC
449 Forest Avenue, Suite 4,5
Portland, Maine 04101
Attn. Rahaman Kargar

Tel:    (207) 213 – 1853
Fax:    (207) 629 – 3542
Email: rahaman@pinetreeconsultants.com

<u>with a copy to</u>:

Jensen Baird Gardner & Henry
Ten Free Street
P.O. Box 4510
Portland, Maine 04112
Attn: Jeffrey Herbert, Esq.

Tel:    (207) 775-7271
Fax:    (207) 775-7935-1579
Email: JHerbert@optlaw.net

<u>FOR THE EMPLOYEE</u>:

_____
_____
_____

Tel:_____
Fax:_____
Email: _____

<u>with a copy to</u>:

- 7 -

_____

_____

Tel:_____

Fax:_____

Email: _____

11.5    ASSIGNMENT.   The rights and obligations of Company together with its obligations and all of Employee's covenants and agreements hereunder may be assigned by Company to any parent, subsidiary or other affiliate of the Company by operation of law or by contractual assignment; provided, however, that the Company shall continue to guarantee the obligations, agreements, duties and covenants hereunder. The rights and obligations of Employee under this Agreement are not assignable.

11.6    COMPLETE AND ENTIRE AGREEMENT. This Agreement contains all of the terms agreed upon by the parties with respect to the subject matter hereof and supersedes all prior agreements, representations and warranties of the parties as to the subject matter hereof.

11.7    AMENDMENTS. This Agreement may be amended, or any provision of the agreement may be waived, provided that any such amendment or waiver will be binding on the parties only if such amendment or waiver is set forth in a writing executed by all parties hereto. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other breach.

11.8    SURVIVAL. Articles 7, 8, 9 and 11 shall survive expiration of the Term of this Agreement and/or termination of Employee's employment under this Agreement.

11.9    WAIVER OF JURY TRIAL. Each of the parties hereby agrees to irrevocably and unconditionally waive trial by jury in any proceeding arising out of or related to this Agreement.

### Article 12
### Defined Terms

(a)    "*Affiliate*" means, with respect to any specified Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with such specified Person. With respect to the Restricted Person, natural Persons who are Affiliates shall include his wife, child(ren) and relatives by blood or marriage.

(b)    "*Confidential Information*" means all information of Company with respect to it or its Affiliates or their respective businesses, operations, financial affairs, performance, assets, liabilities, technology, processes, products, contracts, customers, licensees, sublicensees, suppliers, personnel, consultants or plans (including any such

information consisting of or otherwise relating to know-how, technology, inventions, prototypes, designs, drawings, sketches, processes, license or sublicense arrangements, formulae, proposals, research and development activities, customer lists, pricing lists, marketing or sales techniques or plans, operations manuals, service manuals, financial information or projections.

(c)     "***Non-competition Period***" shall mean the period commencing on the date of this Non-competition Agreement and ending on the date that is five (5) years from the termination of Employee's employment under this Employment Agreement.

(d)     "***Geographic Market Area***" means a ONE HUNDRED TWENTY MILE (120) mile radius of the Company's business premises located at P.O. Box 173089, Tampa, Florida.

(e)     "***Person***" means any: (i) individual; (ii) corporation, general partnership, limited partnership, limited liability partnership, trust, company (including any limited liability company or joint stock company) or other organization or entity; or (iii) governmental body or authority.

(f)     "***Restricted Customer***" means any individual or entity to whom/which the Company has done business with during the one (1) year period preceding the date of this Employment Agreement.

*[Signature Page Follows]*

- 9 -

**IN WITNESS WHEREOF**, the parties hereto have duly executed this

Employment Agreement, as of the date first written above.

**COMPANY:**

PINE TREE CONSULTANTS, LLC

_Kaitlyn Miller_                  By: _Rahaman Kargar_
Witness                                Name: Rahaman Kargar
                                       Title:  Manager

**COMPANY:**

EASYADVOCATES, LLC

_Kaitlyn Miller_                  By: _Rahaman Kargar_
Witness                                Name: Rahaman Kargar
                                       Title:  Manager

**EMPLOYEE:**

_Kaitlyn Miller_                  _Chase Kirkland_
Witness

*[Signature Page to Employment Agreement – _____ ]*

**EXHIBIT A**
**To the Employment Agreement**
**of**

_____

<u>**Principal Responsibilities of the Position**</u>

**EXHIBIT B**
**To the Employment Agreement**
**of**

_____

**<u>Initial Fringe Benefits</u>**

# citrix | RightSignature

## SIGNATURE CERTIFICATE

**REFERENCE NUMBER**
3D0CF74C-0397-43EE-9543-3D36F10BC5FD

### TRANSACTION DETAILS

**Reference Number**
3D0CF74C-0397-43EE-9543-3D36F10BC5FD

**Transaction Type**
Signature Request

**Sent At**
03/30/2022 16:59 EDT

**Executed At**
03/30/2022 17:03 EDT

**Identity Method**
email

**Distribution Method**
email

**Signed Checksum**
c1360ef9425e4b53efae28825c17eb78ef6ab05aa0d74a30c42100658c3691cc

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

### DOCUMENT DETAILS

**Document Name**
Chase-Employment Agreement -

**Filename**
chase-employment_agreement_-.pdf

**Pages**
12 pages

**Content Type**
application/pdf

**File Size**
422 KB

**Original Checksum**
d833e0670e76d79beed1116b6670d7ab723691be4817fe67e9487ecf0faaa545

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name** Chase Kirkland | **Status** signed | **Viewed At** 03/30/2022 17:02 EDT |
| **Email** chase@ezadvocates.com | **Multi-factor Digital Fingerprint Checksum** 901f40d44e5f91104cea88c299d6d55c7b0a563531c28487f78bd8312d874b72 | **Identity Authenticated At** 03/30/2022 17:03 EDT |
| **Components** 1 | **IP Address** 156.146.59.177 | **Signed At** 03/30/2022 17:03 EDT |
| | **Device** Chrome via Windows | |
| | **Typed Signature** *Chase Kirkland* | |
| | **Signature Reference ID** E727978D | |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 03/30/2022 16:59 EDT | EZ Advocates (rahaman@ezadvocates.com) created document 'chase-employment_agreement_-.pdf' on Chrome via Mac from 66.222.121.7. |
| 03/30/2022 16:59 EDT | Chase Kirkland (chase@ezadvocates.com) was emailed a link to sign. |
| 03/30/2022 17:02 EDT | Chase Kirkland (chase@ezadvocates.com) viewed the document on Chrome via Windows from 156.146.59.177. |
| 03/30/2022 17:03 EDT | Chase Kirkland (chase@ezadvocates.com) authenticated via email on Chrome via Windows from 156.146.59.177. |
| 03/30/2022 17:03 EDT | Chase Kirkland (chase@ezadvocates.com) signed the document on Chrome via Windows from 156.146.59.177. |